**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1672**

---

ANDRE G.H. LE DOUX, V,

Plaintiff − Appellant,

v.

WESTERN EXPRESS, INC.; ERVIN JOSEPH WORTHY,

Defendants – Appellees.

------------------------------

AMERICAN TRUCKING ASSOCIATIONS, INC.; TRUCKING INDUSTRY DEFENSE ASSOCIATION,

Amici Supporting Appellees.

---

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, Senior District Judge. (6:20−cv−00051−NKM; 6:20−cv−00052−NKM)

---

Argued: October 30, 2024 Decided: January 23, 2025

---

Before DIAZ, Chief Judge, KING, Circuit Judge, and Louise W. FLANAGAN, United States District Judge for the Eastern District of North Carolina, sitting by designation.

---

Affirmed by published opinion. Chief Judge Diaz wrote the opinion, in which Judge King and District Judge Flanagan joined.

---

**ARGUED:** Edward Kyle McNew, MICHIEHAMLETT, Charlottesville, Virginia, for Appellant. Monica T. Monday, GENTRY LOCKE, Richmond, Virginia, for Appellees. **ON BRIEF:** Stephen C. Huff, CRANDALL & KATT, Roanoke, Virginia; John E. Lichtenstein, Gregory L. Lyons, LICHTENSTEIN LAW GROUP PLC, Roanoke, Virginia; Paul R. Thomson III, THOMSON LAW FIRM, PC, Roanoke, Virginia, for Appellant. Ashley W. Winsky, Jeffrey P. Miller, David R. Berry, GENTRY LOCKE, Roanoke, Virginia, for Appellees. Gibson S. Wright, D. Cameron Beck, Jr., MCCANDISH HOLTON, PC, Richmond, Virginia, for Amici Curiae.

DIAZ, Chief Judge:

A jury found that Ervin Worthy wasn't negligent after he crashed his tractor trailer into Andre Le Doux's van. Le Doux doesn't directly challenge that verdict. Instead, he claims the district court erroneously excluded expert testimony about the weather conditions at the time of the accident and the standard of care a tractor trailer driver should use when encountering those conditions. He also challenges the district court's decision not to submit his negligent hiring claim against Worthy's employer, Western Express, to the jury.

We affirm. The district court didn't abuse its discretion by excluding the challenged expert testimony. And given this case's unique procedural posture, where a jury has found that an employee wasn't negligent, Western Express isn't liable for negligently hiring that employee.

## I.

### A.

While driving south in the left lane of Interstate 81 in Rockbridge County, Virginia, Le Doux came upon traffic that had reached a sudden standstill. A torrential downpour had replaced a sunny day. Exactly when and where the rain began, and when it became severe, is an issue the parties vigorously contested in the district court.

Le Doux argues that the rain had been heavy for at least several minutes, with a preceding period of lighter rain. Worthy and Western Express say the deluge came almost

out of nowhere, with just a light drizzle preceding it. But what isn't contested is that, at the time and place of the accident, the rain had become a downpour.

Le Doux braked as he approached stalled traffic. But a vehicle behind him pushed Le Doux's van into the SUV in front of him. This minor fender-bender forced the vehicle that hit Le Doux into the median, leaving Le Doux's van the last in line in the left lane.

Worthy was driving a Western Express tractor trailer somewhere behind Le Doux in the right lane with his cruise control set to 65 miles per hour, five miles per hour under the speed limit. Worthy saw a wall of water ahead of him and hit the brakes, which automatically turned off the cruise control. Only then did he see the stalled traffic behind the wall of water. He maneuvered the tractor trailer into the left lane to avoid vehicles in the right.[1]

But Worthy's attempt to stop came too late. His tractor trailer smashed into the back of Le Doux's exposed van. Le Doux suffered devastating and permanent injuries.

B.

Le Doux sued Worthy and Western Express. As to Worthy, Le Doux alleged that he was (1) negligent and (2) willfully and wantonly negligent. Because Worthy was operating his tractor trailer on his employer's behalf, Le Doux sought to impose vicarious liability for Worthy's negligence on Western Express under the doctrine of respondeat superior. Le Doux also brought a direct theory of liability against Western Express,

[1] Worthy's tractor trailer had a camera that captured the seconds before the collision. That footage shows heavy rain, the traffic behind the rain, and Worthy's lane switch and collision with Le Doux's van.

alleging that it negligently hired (and retained) Worthy despite being aware of a history of misconduct and traffic infractions.[2]

On appeal, Le Doux challenges three pretrial rulings.

First, Le Doux retained meteorologist Steven Greco and accident reconstructionist Heath Stewart as experts. Greco sought to use radar data to map the amount of precipitation at points along I-81. Stewart would then use GPS data from Worthy's truck to plot a course against those maps that would describe the weather conditions in the minutes just before the crash.

The maps that Greco created had three- to six-minute gaps in scanning the weather, which the district court found introduced some speculation as to the exact conditions faced at a given moment in time. And the GPS data from Worthy's truck that Stewart would interpret was based on an inaccurate time stamp, which compounded the timing problem. So the court excluded Greco's testimony under Federal Rule of Evidence 403 and Stewart's weather-related testimony under Federal Rule of Evidence 702. *Paul v. W. Express, Inc.*, No. 6:20-cv-51, 2023 WL 2620241, at *4–5 (W.D. Va. Mar. 23, 2023).

Second, the district court excluded the testimony of Le Doux's trucking expert, Michael Napier. Le Doux wanted Napier to testify about the standard of care a commercial driver operating a tractor trailer must exercise. For our purposes, that means how a reasonable tractor trailer driver should respond to rainy and wet conditions. The district

[2] Le Doux concedes that the relevant law is the same for both negligent hiring and negligent retention. So we, like the parties, refer to this claim as the negligent hiring claim.

court concluded that Napier's testimony wouldn't help the jury because it implicated only "non-specialized questions about driving" that ordinary jurors could grasp on their own. J.A. 625.

Third, the district court dismissed Le Doux's negligent hiring claim at summary judgment, on a theory neither party endorsed. The district court held that a negligent hiring claim in Virginia is available "in circumstances when respondeat superior's 'scope of employment' limitation protects employers from liability." J.A. 557 (quoting *Interim Pers. of Cent. Va., Inc. v. Messer*, 559 S.E.2d 704, 707 (Va. 2002)). Western Express conceded that Worthy was acting within the scope of his employment at the time of the crash, so if Worthy were found negligent, Western Express would be vicariously liable.

The district court reasoned that, assuming the evidence was sufficient to allow a negligent hiring claim to survive summary judgment, there was no scenario where Worthy could be liable but not Western Express. Because the negligent hiring claim would "add elements which, if proven at trial, [would] not change the scope of liability but [would] potentially add days of evidence on extraneous topics," the court entered summary judgment on that claim. J.A. 558.

After trial, the jury found Worthy wasn't negligent.

## II.

We review the exclusion of expert witness testimony for abuse of discretion. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001). "[T]he standard 'requires a reviewing court to show enough deference to a primary decisionmaker's

judgment that the court does not reverse merely because it would have come to a different result in the first instance.'" *Aikens v. Ingram*, 652 F.3d 496, 504 (4th Cir. 2011) (en banc) (Diaz, J., concurring) (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)).

Meanwhile, we review the district court's dismissal of the negligent hiring claim at summary judgment de novo.[3] *Brooks v. Johnson*, 924 F.3d 104, 111 (4th Cir. 2019).

III.

A.

It's the district court's job to "decide any preliminary question about whether a witness is qualified." Fed. R. Evid. 104(a). Rule of Evidence 702 establishes the criteria for admitting the testimony of an expert witness. The party proffering the expert's testimony must show that it's "(1) helpful to the jury in understanding the evidence or determining a fact at issue, (2) based on sufficient facts or data, (3) the product of reliable

[3] Western Express and Worthy contend that we review the decision for plain error because Le Doux never briefed or argued in the district court whether Virginia law permits a negligent hiring claim to proceed where the employer has conceded its employee acted within the scope of their employment. That's an odd contention, for two reasons. First, plain error review applies only in criminal cases. *See United States v. Lavabit, LLC* (*In re Under Seal*), 749 F.3d 276, 285–86 (4th Cir. 2014) (comparing the "fundamental error" standard in civil cases with the "plain error" standard we apply in criminal cases). But more importantly, the reason Le Doux never addressed the issue was that Western Express and Worthy never pursued it in the district court; in fact they *disclaimed* it. J.A. 465. The district court decided on its own. And Le Doux subsequently objected. J.A. 629. That's enough to preserve the issue. "Lawyers and clients need not pursue the persistent strategies of rebuffed suitors in Victorian courtship novels." *Ward v. Soo Line R.R.*, 901 F.3d 868, 882 (7th Cir. 2018).

principles and methods, and (4) the product of a reliable application of those principles and methods to the facts of the case." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (cleaned up). We've emphasized that Rule 702 "imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable." *Nease v. Ford Motor Co.*, 848 F.3d 219, 230 (4th Cir. 2017).

Expert testimony also must satisfy Rule 403, which allows the court to exclude relevant evidence if its probative value is substantially outweighed by a countervailing factor such as unfair prejudice, misleading the jury, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. The Supreme Court has cautioned that because "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," a trial judge should "exercise more control over experts than over lay witnesses" in applying Rule 403. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (cleaned up).

1.

We start with the district court's exclusion of Greco's meteorological analysis and Stewart's overlapping location data.

The weather conditions along I-81 right before the accident were of critical importance. If it had been raining or raining hard for a long time, then a driver of a tractor trailer (like other drivers) should have driven more carefully. But if the torrent of rain came without warning, then that might cut against a finding that a driver was negligent.

The problem here wasn't a lack of eyewitness testimony. But the eyewitnesses contradicted each other:

- Kenneth Murphy, a passenger in Le Doux's van, said the day went from sunny to lightly raining for about 15 minutes to downpouring for about 10 minutes before the accident.

- Gregory Piccano, a passenger in a nearby van driven by Le Doux's son, testified that 20–30 minutes before the accident there was "a constant annoying rain." J.A. 635. About 10 to 15 minutes before the accident, that rain turned into "one of the hardest rains [he'd] ever seen." J.A. 635.

- Eric Bernocco-Donahue, in the same van as Piccano, said that there was some normal light rain that quickly became heavy.

- Roger Hiatt, who initially rear-ended Le Doux, said that there were a few drops of rain before seeing heavy rain a quarter of a mile ahead at the accident site.

- Worthy testified that it started drizzling, and once it started drizzling he saw a wall of water and began braking.

- Deborah Wheeler and her passenger Jessica Holder, who saw the accident from Wheeler's vehicle, both testified that the rain came on suddenly. Wheeler said it began to drizzle, and her windshield wipers ran about three times before a wall of water hit. Holder likewise described the "wall of rain" as happening "all of a sudden." J.A. 687.

Greco obtained radar maps of the area around the accident scene. The radar scans that created the maps occurred every three to six minutes. A radar map with a given time stamp displayed the rainfall rate during the period from the time stamp forward three to six minutes.

Le Doux asked Stewart to plot Worthy's travel along I-81 on Greco's maps. That plot could theoretically show the actual conditions Worthy experienced as he drove his tractor trailer. To determine Worthy's location, Stewart used GPS data from Worthy's truck.

But a defense expert, James Whelan, pointed out that the GPS data didn't work the way Stewart assumed. The time stamps were known to be inaccurate because the source for GPS data didn't directly communicate with a satellite or cellular source. That mismatch, as explained by Whelan, caused the GPS data to report timing events that were off by as much as six minutes and thirty-one seconds.

So the court excluded Stewart's attempt to plot Worthy's travel, and it excluded all of Greco's testimony. First, it found that Stewart's testimony was speculative and flawed because of (1) the three- to six-minute gaps between radar passes and (2) the inaccurate time stamps on the GPS data. *W. Express, Inc.*, 2023 WL 2620241, at * 4. Second, it concluded that without Stewart's testimony, Greco's maps had little probative value and in fact might lead the jury to attempt to infer Worthy's location on the maps. *Id.* That posed a risk of unfair prejudice and jury confusion.

Neither ruling was an abuse of discretion. Gaps of up to six minutes in weather scans are significant when trying to describe the weather conditions a moving vehicle on a highway encounters. And when the uncertainty those gaps caused was compounded by erroneous location data, Stewart's expert testimony became speculative at best. Without Stewart's testimony on Worthy's location, and given the conflicting eyewitness testimony, we can't say the district court abused its discretion by excluding Greco out of a concern the jury would speculate about Worthy's location.

Le Doux's counterarguments aren't persuasive. He insists that any variability in the weather scans inures to Worthy's benefit. And he contends that because the storm was

moving west to east and the accident occurred while on the leading edge of the storm, the scans would underestimate the rainfall Worthy encountered.

But that argument implicitly acknowledges the significance of the uncertainty in Greco's maps. There's also no evidence in the record to show that the storm was moving west to east so uniformly that *any* variation favored Worthy. The maps don't reflect a perfectly even line of precipitation; there are clear, even if small, arms and cavities in the storm front and variations in the intensity of the rainfall.

Le Doux's second argument, that the district court placed itself in the role of factfinder by crediting Whelan's report of the inaccurate time stamp, also fails. For one thing, Le Doux never argues that Whelan was wrong, or that Stewart was right, in interpreting the time stamp data. He just takes issue with the court's determination, arguing the discrepancy goes to the weight of the evidence, not admissibility.

But Stewart's methodology was unreliable because he used inaccurate time stamps. And issues of reliability are firmly within the district court's gatekeeping purview. *See Sardis*, 10 F.4th at 284 ("[W]e confirm once again the indispensable nature of district courts' Rule 702 gatekeeping function in all cases in which expert testimony is challenged on relevance and/or reliability grounds.").

Finding no abuse of discretion, we affirm the exclusion of Greco's and Stewart's weather-related testimony.

2.

Le Doux also challenges the exclusion of Napier's testimony. Recall that Le Doux sought to have Napier testify about what a reasonable tractor trailer driver would do in response to the weather conditions Worthy encountered.[4]

Tractor trailers are heavily regulated. As relevant here, 49 C.F.R. § 392.14 establishes the duty of care a commercial motor vehicle driver should employ when encountering hazardous conditions:

> Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the commercial motor vehicle may be operated to the nearest point at which the safety of passengers is assured.

Under Virginia law, this regulation establishes the duty of care for a tractor trailer driver operating under hazardous conditions. Violation of the regulation "does not constitute negligence *per se*"; rather, the regulation creates "an expanded duty of care for the operation of commercial motor vehicles." *Kimberlin v. PM Transp., Inc.*, 563 S.E.2d 665, 668–69 (Va. 2002).

The district court instructed the jury to apply the regulation to this case. The issue, as Le Doux frames it, is that the regulation standing alone is ambiguous as to what specific

[4] Napier would not testify about whether Worthy himself was negligent.

measures a driver of a tractor trailer should take to discharge the duty of "extreme caution." Thus, he claims that Napier's testimony was needed to fully inform jurors about what actions Worthy should have undertaken.

The district court excluded Napier's testimony on the ground that it wouldn't be helpful because "[t]his case involves non-specialized questions about driving that fall within the everyday knowledge and experience of a lay juror." J.A. 625 (cleaned up). Le Doux argues that was an abuse of discretion because, while jurors may understand what to do in their cars in reaction to rain, a tractor trailer is different.

Courts have varied in their treatment of expert witnesses seeking to opine on the negligence of tractor trailer drivers. So for example, courts have admitted (or required) expert testimony where the operator of a tractor trailer was executing a complicated maneuver, such as steering through a tire failure, *Benedict v. Hankook Tire Co.*, 286 F. Supp. 3d 785, 792 (E.D. Va. 2018), or attempting to reverse and recouple a trailer, *Hatten v. Sholl*, No. 3:01-cv-31, 2002 WL 236714, at *4 (W.D. Va. Feb. 13, 2002). In contrast, we've held that excluding an expert who sought to testify about the standard of care—in a tractor trailer accident that occurred in foggy conditions—wasn't an abuse of discretion because a jury could determine whether someone was driving too slow or too fast in those conditions. *Pitt Ohio Express, LLC v. Pat Salmon & Sons, Inc.*, 532 F. App'x 439, 440, 442 (4th Cir. 2013) (per curiam).

Here, it's a close call. Had we been in the district court's shoes, we might well have admitted Napier's testimony. But that's not the test. We ask instead whether the district court's conclusion was "guided by erroneous legal principles . . . or rests upon a clearly

erroneous factual finding." *T.H.E. Ins. v. Davis*, 54 F.4th 805, 818 (4th Cir. 2022) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)). Mindful of our deferential standard of review, we can't say the district court abused its discretion by finding that Napier's testimony wouldn't be helpful.

This isn't a case involving a highly technical maneuver with which a juror is unlikely to be familiar. It's about slowing down and being careful when encountering rain. A juror is likely to know that one should slow down and be extra cautious when encountering heavy rain on the highway. And a juror is also likely to understand that a tractor trailer driver must be more vigilant and slow down sooner than someone driving a Prius. As Stewart testified: "He's driving a tractor trailer, not a Porsche. . . . [Worthy was] limited by the fact of how much kinetic energy he [was] carrying at [that] point." S.A. 391.

At least here, we don't think a regulation that instructs a tractor trailer driver to use "extreme caution" and "reduce speed" in the presence of rain requires expert testimony.

We also think Napier's report confirms this. While his report is long, it's short on specifics. He points out that professional drivers "are trained to be alert and diligent" by "perform[ing] a visual search" up to about a quarter of a mile ahead. S.A. 44–45. Drivers "are prohibited from following too closely behind other vehicles." S.A. 47. In adverse conditions, drivers should "reduce their speed," "travel[] in slower travel lanes," and not use cruise control. S.A. 50–52. In his report, Napier stated that drivers in adverse conditions should reduce their speed by one third of the posted limit, or more when necessary, S.A. 50, but he admitted during his deposition that "it's not an exact science for a truck driver." S.A. 113.

None of these concepts are foreign to the average layperson. They effectively amount to requiring drivers of tractor trailers to slow down, look ahead, take command of their vehicle, and be careful. "When stripped of its technical gloss," Napier's report "did no more than state the obvious." *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990).

Le Doux musters a second argument. He brought, and the district court allowed to go to the jury, a willful and wanton negligence claim against Worthy. He contends that by allowing this claim to go forward, the district court contradicted its ruling excluding Napier's testimony. We disagree.

"Willful and wanton negligence is action taken in conscious disregard of another's rights, or with reckless indifference to consequences that the defendant is aware, from his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to another." *Alfonso v. Robinson*, 514 S.E.2d 615, 618 (Va. 1999). To prevail on a willful and wanton negligence claim, a plaintiff must show a defendant had "an actual or constructive consciousness that injury will result from the act done or omitted." *Id.* In *Alfonso*, the Supreme Court of Virginia explained that this showing was made where a truck driver "had received specialized safety training warning against the very omissions he made prior to the accident." *Id.* at 619.

Le Doux argues that he needed Napier to explain what training Worthy would have received. But there's no indication that expert testimony was needed to explain the driver's training in *Alfonso*, a trucking case where the jury found the defendant willfully and

wantonly negligent. Instead, information about the defendant's training was elicited during his cross-examination. *Alfonso*, 514 S.E.2d at 617.

So too here. Worthy testified about his training. He testified that he understood the regulation. And he explained that he was familiar with the tractor trailer's cruise control system and knew not to use it when raining.

Le Doux claims that "the only way to establish Mr. Worthy's constructive knowledge was through expert testimony establishing what all truck learners learn in the course of their training." Reply Br. at 22. Had Worthy testified that he was never trained on the regulation, or what to do when it rained, we might agree. But Le Doux doesn't point to any aspect of Worthy's training he wasn't able to extract from Worthy himself.

The district court did not abuse its discretion in excluding Napier's testimony.

B.

Finally, Le Doux objects to the district court's dismissal (at summary judgment) of his negligent hiring claim against Western Express. The court explained that because both sides agreed Worthy was acting within the scope of his employment, "there is no scenario at trial in which Worthy [would be] found liable and Western Express [would] not or [the converse]." J.A. 558. So, the district court ruled, "[a]ssuming the evidence [was] sufficient to support [Le Doux's] negligent hiring and retention claims, the Court [would] not submit such claims to the jury."[5] J.A. 557.

[5] We too assume that Le Doux's negligent hiring claim had sufficient factual support to withstand summary judgment.

The Supreme Court of Virginia has never directly answered the question presented here: whether a negligent hiring claim against an employer may proceed where (1) a plaintiff has brought a vicarious liability claim against the employer under the doctrine of respondeat superior and (2) the employer has conceded that the employee was acting within the scope of his employment. The parties invite us to predict how Virginia's highest court would rule. We decline.

Instead, we hold that where a jury has found that the employee didn't commit a tortious act, that finding defeats the proximate causation requirement of a negligent hiring claim.

To be sure, "[t]he tort of negligent hiring is distinct from tort liability predicated upon the doctrine of respondeat superior; the two theories differ in focus." *Interim Pers. of Cent. Va., Inc. v. Messer*, 559 S.E.2d 704, 707 (Va. 2002). The theory of respondeat superior imposes vicarious liability on an employer "for an employee's acts committed within the scope of employment." *J. v. Victory Tabernacle Baptist Church*, 372 S.E.2d 391, 394 (Va. 1988) (quotation omitted). The tort of negligent hiring imposes direct liability on the employer "if the employer is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others." *Se. Apartments Mgmt., Inc. v. Jackman*, 513 S.E.2d 395, 397 (Va. 1999). So we agree with Le Doux that the two torts are different.

But we can't agree that Le Doux could prove a negligent hiring claim against Western Express if the employee Western Express hired didn't commit a tortious act. Put another way, there needs to be a causal connection between the hiring of an employee and

that employee committing a tortious act that a reasonable employer would have foreseen before hiring him.

If Worthy wasn't negligent, then that's impossible. On this point, we think Virginia courts are clear:

> Negligence also must be shown. If negligence is not made to appear, there is no liability, however unskilled the workman may be or however careless he may have been on former occasions. Between incompetency, carelessness and the accident there must be some causal connection. One may not be convicted simply because his character is bad, nor can masters be mulcted in damages merely because they were careless in the selection of their servants.

*Aronovitch v. Ayres*, 193 S.E. 524, 528 (Va. 1937); *see also Va. Ry. & Power Co. v. Davidson's Adm'r*, 89 S.E. 229, 230 (Va. 1916) ("The mere employment or retention of an unfit servant cannot be the proximate cause of an accident. The unfitness must result in some specific act of negligence or incompetency before any liability attaches.").

Le Doux's arguments to the contrary don't persuade.

First, he points out that "there is no requirement that the negligently hired employee injure another through negligence." Reply Br. at 4 (quoting *Victory Tabernacle*, 372 S.E.2d at 394). That's true but unhelpful.

One could be liable for negligently hiring an employee with a known history of committing intentional torts who then commits an intentional tort. The court in *Victory Tabernacle*, confronted with an employee who sexually assaulted a child, explained "[t]o say that a negligently hired employee who acts willfully or criminally thus relieves his employer of liability for negligent hiring when willful or criminal conduct is precisely what the employer should have foreseen would rob the tort of vitality." *Victory Tabernacle*, 372

S.E.2d at 394. Nothing in *Victory Tabernacle* offends the requirement under Virginia law that an employee must commit a tortious act before an employer can be liable for negligently hiring him.

Second, Le Doux posits that there's some lower bar for an employee's misconduct in the negligent hiring context. He asserts that to prove a negligent hiring claim, he need show only that the employee was "incompetent or unfit" and the accident was "causally related to that unfitness"—not that the employee's conduct stooped to the level of negligence. Reply Br. at 6–7.

We don't see any support for that proposition in Virginia's cases.[6] Negligent hiring arose out of the fellow servant doctrine, a theory that predated workman's compensation claims. Kent Sinclair, *Sinclair on Virginia Remedies* § 26-1[A], LexisNexis (database

[6] Le Doux argues that some jurisdictions have prevented an admission that an employee was acting within the scope of their employment from relieving an employer of liability under a negligent hiring claim. Reply Br. at 11–13; *see, e.g.*, *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 337 (Ky. 2014); *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 332 (S.C. 2008). But unlike those cases, we receive this appeal after a jury verdict of no negligence.

Le Doux also points to *Zibolis-Sekella v. Ruehrwein*, No. 12-cv-228, 2013 WL 3208573, at *2–3 (D.N.H. June 24, 2013), in which the district court commented that a theory of negligent hiring doesn't require an act of negligence by the employee under New Hampshire law. But as the First Circuit explained, the New Hampshire case that decision relied on, *Cutter v. Town of Farmington*, 498 A.2d 316 (N.H. 1985), "reached a somewhat unusual result because of unusual facts—the policeman was entrusted with an instrument [handcuffs] without [being] given knowledge of its dangerous capability." *Est. of Melucci ex rel. Melucci v. Brown*, 946 F.2d 144, 146 (1st Cir. 1991). Nobody suggests Worthy was unaware of the potential danger here.

updated 2024). That doctrine imposed liability on employers that negligently hired an employee who subsequently harmed another employee. *Id.*

In one of the earliest descriptions of the fellow servant doctrine, the Supreme Court of Virginia explained that liability under the doctrine exists because "a person entering the employment of another assumes all risks incident to that employment, including the danger of injury *by the fault or negligence* of a fellow servant." *Norfolk & W. R.R. v. Nuckols' Adm'r*, 21 S.E. 342, 343 (Va. 1895) (emphasis added). In other words, liability requires a tortious act.

Resisting this conclusion, Le Doux seizes on the language from *Davidson's Administrator* that an employee's "unfitness must result in some specific act of negligence or *incompetency* before any liability attaches." 89 S.E. at 230 (emphasis added). In his view, incompetency is a lower threshold than negligence.

We disagree. For one thing, we agree with the First Circuit's observation when faced with an identical argument under New Hampshire law. "If [the defendant] was not negligent, he was not then incompetent." *Est. of Melucci ex rel Melucci v. Brown*, 946 F.2d 144, 146 (1st Cir. 1991). And the facts of *Davidson's Administrator* undermine this argument. There, Virginia's Supreme Court faulted a jury instruction allowing liability if the jury found that the defendant failed to use reasonable care in hiring an employee and therefore proximately caused the death of a child. *Davidson's Adm'r*, 89 S.E. at 230. The court explained that the instruction was wrong because "there must be evidence of *some intervening negligence which is the proximate cause of the injury*" beyond the employer's retention of an unfit employee. *Id.* (emphasis added). Given that holding, we don't think

that *Davidson's Administrator* set out two distinct legal standards, either of which could support a negligent hiring claim.

We also don't find cases that allow both respondeat superior and negligent hiring claims to go to the jury useful. True, Virginia courts have done so for over a century. *See, e.g.*, *Davis v. Merrill*, 112 S.E. 628 (Va. 1922). But *Davis* involved a gatekeeper of a railroad company shooting the passenger of a car that attempted to cross the tracks. *Id.* at 629. The court affirmed the jury's verdict against the railroad on both respondeat superior and negligent hiring claims because the gatekeeper was acting within the scope of his employment and the employer should have known of his violent history. *Id.* at 629–32.

That's not helpful here where a jury has found Worthy didn't commit a tort. In contrast, the tortious conduct of the employee in *Davis* was, to put it mildly, obvious. No party before us points to a Virginia case holding an employee didn't commit a tort but the employer remained liable, and we know of none.[7]

Because a jury found that Worthy didn't commit a tort, under Virginia law his negligent retention claim fails.

---

[7] Although we rest our conclusion that the jury's finding that Worthy was not negligent dooms a claim of negligent hiring solely on the decisions of Virgina's highest court, Virginia's trial courts seem to agree with us. *See Hayes v. Jones*, 107 Va. Cir. 439, 441–42 (2004) (explaining that a negligent retention claim based on a manager shoving an employee necessarily required a breach of the duty of care, as "[w]ithout the shove, no matter how negligent the retention there is no cause of action in tort"), *Goforth v. Office Max*, 48 Va. Cir. 463, 469 (1999) ("Even though negligent hiring is primary and not vicarious liability, it seems incongruous that an employer could be liable based on conduct of an employee when the employee himself would not be civilly liable.").

To be clear, we don't hold that a stipulation as to scope of employment invariably insulates an employer against a negligent hiring claim under Virginia law. We're sympathetic to Le Doux's frustration that his negligent hiring claim was dismissed on grounds Western Express never argued and that he was unable to fully present his case to a jury. But because his negligence claim against Worthy failed, he can't proceed on the negligent hiring claim against Western Express.

*AFFIRMED*